The PEOPLE of the State of Colorado, Complainant,

v.

James S. BERTAGNOLLI, Attorney–Respondent.

No. 96SA3.

Supreme Court of Colorado, En Banc.

Aug. 19, 1996.

F. Stephen Collins, Special Disciplinary Counsel, Denver, for Complainant.

Larry S. Pozner, Denver, for Attorney–Respondent.

PER CURIAM.

The respondent attorney was convicted of two counts of third degree sexual assault, a class 1 misdemeanor. This attorney discipline proceeding ensued, and the parties entered into a stipulation, agreement, and unconditional admission of misconduct. In the stipulation, the parties recommended the imposition of a three-year suspension from the practice of law. Upon consideration of the stipulation, however, a hearing board of the supreme court grievance committee entered findings and recommended that the respondent be disbarred and assessed the costs of the proceedings. A hearing panel approved the findings and adopted the board's recommendation of disbarment. The respondent has excepted to the panel's recommendation. We accept the hearing panel's recommendation and order that the respondent be disbarred.

### I.

The respondent was admitted to the Colorado bar in 1969. The special disciplinary counsel and he stipulated to the following facts and conclusions, and the hearing board found:

### A.

The respondent settled a personal injury action on behalf of a woman client in May 1991. In June 1991, the respondent's former client contacted him and discussed a potential personal injury protection claim against a medical provider. The respondent told her that he did not handle such claims and that she should find another lawyer.

About three days later, at the suggestion of the former client, she and the respondent met for lunch. Among other things, they discussed her new apartment. Later that afternoon, the two spoke on the telephone and arranged to meet at the former client's new apartment. The respondent arrived at about 2:00 p.m. While in the apartment, he sexually fondled the former client and had sexual intercourse with her.

On November 21, 1991, based on the foregoing conduct, the respondent was charged in El Paso District Court with first degree sexual assault, § 18–3–402, 8B C.R.S. (1986), a class 3 felony.

### B.

Another client retained the respondent to represent her with respect to a claim for personal injuries she suffered when she allegedly ingested glass with her food at a restaurant. The respondent also represented the woman's husband in connection with the same incident. The respondent filed an action on behalf of the wife and husband against the restaurant.

In late August 1991, the woman client met the respondent at his office. As she was leaving, the respondent placed his hands on her breasts. As a consequence, on November 21, 1991, the respondent was charged in El Paso District Court with third degree sexual assault, § 18–3–404, 8B C.R.S. (1986), a class 1 misdemeanor.[1]

### C.

The same client met the respondent at his office again on Saturday, September 7, 1991, in connection with her lawsuit against the restaurant. During this meeting, the respondent sexually fondled his client, and they engaged in oral sex. As a result, on November 21, 1991, the respondent was charged in El Paso District Court with first degree sexual assault, § 18–3–402, 8B C.R.S. (1986), a class 3 felony.

### II.

On May 10, 1993, in proceedings based upon the three criminal counts mentioned above, the respondent pleaded guilty to two counts of third degree sexual assault, § 18–3–404, 8B C.R.S. (1986), a class 1 misdemean-

---

1. As pertinent to this case, third degree sexual assault is defined in § 18–3–404(1)(a) as follows:

   (1) Any actor who knowingly subjects a victim to any sexual contact commits sexual assault in the third degree if:

   (a) The actor knows that the victim does not consent. . . .

§ 18–3–404(1)(a), 8B C.R.S. (1986).

or. One count of third degree sexual assault referred to the June 1991 assault; the other pertained to the September 7, 1991, incident. The third degree sexual assault count with respect to the August 1991 incident was dismissed, as were the two first degree sexual assault counts.

The respondent's guilty pleas were entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). When entering a so-called *Alford* plea, the defendant maintains his innocence. Prior to accepting the guilty plea, however, the trial judge is required to inquire into the defendant's factual guilt. *Id.* at 38 n. 10, 91 S.Ct. at 167 n. 10. Notwithstanding the respondent's *Alford* plea, we conclude for the purpose of this discipline proceeding that he actually committed the acts necessary to accomplish third degree sexual assault. *People v. Gritchen*, 908 P.2d 70, 71, n. 1 (Colo.1995); *People v. Martin*, 897 P.2d 802, 803 (Colo. 1995). The respondent therefore knowingly had sexual contact with a former client and with a current client without either woman's consent. § 18–3–404(1)(a).

On July 23, 1993, the respondent was sentenced to serve eighteen months in jail on each count, with the sentences to run consecutively. He was ordered to pay $7,230.59 in restitution, a $1,000 special advocate surcharge, and miscellaneous other costs. He began serving his sentence on August 2, 1993. The respondent's sentence was reconsidered on March 17, 1994, and he was resentenced to home confinement for the remainder of the sentence.

Pursuant to the stipulation, the hearing board concluded that the foregoing conduct violated DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); C.R.C.P. 241.6(2) (any act or omission violating accepted rules or standards of legal ethics constitutes ground for discipline); C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is ground for discipline); and C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for discipline).

### III.

■ In the stipulation, the parties recommended that the respondent be suspended from the practice of law for three years. The hearing board, however, determined that disbarment was appropriate.

All lawyers must of course obey the law, but we consider it particularly serious when a lawyer engages in criminal conduct that involves the knowing infliction of harm on another person or persons—in this case a client and a former client. *People v. Martin*, 897 P.2d 802, 804 (Colo.1995) (lawyer suspended for one year and one day following conviction for third degree sexual assault on a client); *People v. Lowery*, 894 P.2d 758, 760 (Colo. 1995) (sexual harassment of three law firm employees warrants suspension for one year and one day); *People v. Crossman*, 850 P.2d 708, 710–11 (Colo.1993) (lawyer suspended for one year and one day for solicitation of sexual favors in exchange for legal fees). Moreover, the respondent breached his fiduciary duty to his client's husband, who was also the respondent's client.

Although not classified as a felony, third degree sexual assault is a crime of moral turpitude and is a grave offense for lawyer discipline purposes. *Martin*, 897 P.2d at 804. In *People v. Dawson*, 894 P.2d 756, 757 (Colo.1995), the lawyer was convicted of attempted second degree sexual assault on a seventeen-year-old high school student working as a filing clerk at his law firm. The lawyer also stipulated that he had initiated sexual contact and sexual intrusion on a client. He asserted that the acts were consensual, but the client maintained that she did not consent. *Id.* We disbarred the lawyer in *Dawson* even though the only prior discipline was a letter of admonition:

> [T]he details and the nature of the respondent's attempted sexual assault on the seventeen-year-old high school student filing clerk working at his law firm, together with his sexual conduct toward his client, reflect so seriously and adversely on the respondent's future ability to ever practice

law that we conclude he should be disbarred.

*Id.* at 758. The respondent concedes that lawyers have previously been disbarred for sexual assault, but he contends that the cases usually involved at least second degree sexual assault or child victims. On the other hand, in a case involving third degree sexual assault, we have suspended the lawyer. *See Martin,* 897 P.2d at 804 (lawyer suspended for one year and one day following conviction on one count of third degree sexual assault on a client).

■ This case is more serious than *Martin,* however. First, the respondent in this case was convicted of two separate sexual assaults on two victims. A pattern of misconduct and multiple offenses are aggravating factors with respect to analyzing the level of discipline. ABA *Standards for Imposing Lawyer Sanctions* 9.22(c), (d) (1991 & Supp.1992) (ABA *Standards* ).

■ In addition, the lawyer in *Martin* had no prior disciplinary history. The respondent does have such a history, *People v. Bertagnolli,* 861 P.2d 717 (Colo.1993), and this is also an aggravating factor, ABA *Standards* 9.22(a). The respondent was publicly censured for knowingly making a false statement during closing argument before an arbitration panel. *Bertagnolli,* 861 P.2d at 719–20. The respondent has therefore previously engaged in dishonest conduct serious enough for public discipline. *Id.* at 721.

Furthermore, based on the stipulation, the hearing board found the following additional aggravating factors: "a selfish motive in engaging in the admitted sexual misconduct," *see* ABA *Standards* 9.22(c); vulnerability of the two clients, "who had put their trust in respondent and respondent abused that trust," *see* ABA *Standards* 9.22(g); and more than twenty years experience in the practice of law, *see* ABA *Standards* § 9.22(i). The board also found as an aggravating factor that "the respondent has failed to acknowledge the wrongful nature of his conduct." *See* ABA *Standards* 9.22(g).

. In his exceptions, the respondent asserts that the hearing board erred in not considering certain factors to be mitigating, without the necessity for further proof, since the parties had stipulated that they existed. In pertinent part, the respondent and the special disciplinary counsel stipulated:

1. The respondent suffered from personal or emotional problems which played a substantial role in this misconduct. *See ABA Standard,* 9.32(c).

2. The respondent has demonstrated a cooperative attitude toward the grievance process. *See ABA Standard,* 9.32(e).

3. The respondent has suffered substantial punishment through the criminal justice system, and the respondent has faced the imposition of other penalties for his actions. *See ABA Standard,* 9.32(k).

4. The respondent previously enjoyed a good reputation within his community and had been a respected member of the bar. *See ABA Standard,* 9.32(g).

The hearing board credited the respondent with a cooperative attitude toward the proceedings. However, the board did not consider the respondent's personal and emotional problems to be a mitigating factor because "no facts were stipulated to as to the nature of any personal or emotional problems or how these problems affected the misconduct...." Moreover, the respondent's previously good reputation was not deemed mitigating because "other than the bald statement as an admitted fact, no background facts were submitted to the Board...."

Finally, the board noted that although the respondent was originally sentenced to eighteen months in jail on each of the two sexual assault counts, to be served consecutively, he in fact served a little over seven months in jail, and was resentenced to home confinement for the balance of his sentence. In addition, no evidence was presented to the hearing board to indicate whether the respondent has paid any of the restitution or special advocate surcharge he was ordered to pay. The board therefore found "that the penalties already suffered by the respondent will be considered as neither aggravating nor mitigating factors."

It is true that a stipulation signed by the parties ordinarily constitutes a judicial ad-

mission that dispenses with the requirement of additional evidence. *Bertagnolli*, 861 P.2d at 720. In this sense, the respondent is correct, and the board should not have disregarded the mitigating factors that the respondent suffered from personal or emotional problems which played a substantial role in the misconduct; that he enjoyed a good reputation before his criminal convictions; and that the respondent has suffered substantial punishment through the criminal justice system. *See* ABA *Standards* 9.32(c), (g), & (k).

Nevertheless, since the record in this case contains the stipulation between the parties, and the hearing board did not take any additional evidence, we are in the same position as the board in evaluating the weight of the mitigating factors.[2]

The recognition that the respondent suffered from personal or emotional problems at the time he sexually assaulted his victims is only the first step in the analysis. Our overriding concern in a proceeding like this is the protection of the public. *Martin*, 897 P.2d at 804 (in a lawyer discipline case "where the respondent has already been punished by the criminal justice system, our aim in determining the level of discipline is not retribution, but the protection of the public").

The fact that the respondent had personal or emotional problems, without more specific information concerning the nature of those problems and whether they continue or have abated, provides us little assistance in evaluating either the likelihood that the respondent will repeat these offenses or the safeguards necessary to protect the public in the future. Further, although the respondent has been punished by the criminal justice system, that fact is relevant in this discipline proceeding only insofar as it informs us of his future propensity to engage in similar acts. In this sense, the stipulation is not especially helpful. Finally, for the same reason, the

fact that the respondent at one time enjoyed a good reputation does not weigh heavily in view of the nature of his transgressions. Crimes of sexual assault commonly occur in secret and remain unknown to the public until the victim complains.

After carefully considering the character of the misconduct and weighing the mitigating and aggravating factors, including the respondent's prior discipline, we are persuaded that disbarment is the appropriate disciplinary sanction.

### IV.

It is hereby ordered that James S. Bertagnolli be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the issuance of this opinion. It is further ordered that Bertagnolli pay the costs of this proceeding in the amount of $975.63 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado, 80202, within thirty days after this opinion is issued.

---

2. We therefore do not find it necessary to remand the matter to the hearing board so that the respondent may present evidence to expand upon the factors in mitigation. The respondent was represented by counsel before the grievance committee and he voluntarily entered into the stipulation. Although the respondent had the opportunity for a hearing in which he could have presented evidence, the *respondent's* counsel suggested that the hearing date be vacated, and the hearing board complied. The respondent made the decision to submit the stipulation and to let the hearing board and panel make the recommendation of discipline based solely on that document. We perceive no violation of due process.